IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ESSEX INSURANCE COMPANY,

       Plaintiffs,

v.                                    Civil Action No. 5:04CV139
                                                   (STAMP)

DUSTIN NEELY,
MOLLIE FITZSIMMONS,
LUCKY LADY SALOON ASSOCIATION
d/b/a LUCKY LADY SALOON
and CHERYL WEST,

       Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS LUCKY LADY SALOON AND CHERYL WEST'S**
**MOTION TO JOIN DEFENDANTS NEELY AND FITZSIMMONS' RESPONSE**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND GRANTING AS FRAMED PLAINTIFFS' MOTION TO STRIKE**
**DEFENDANTS NEELY AND FITZSIMMONS' RESPONSE IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


I.   Procedural History

     Essex Insurance Company ("Essex"), the plaintiff in the above-styled civil action, seeks a declaratory judgment by this Court establishing the rights and duties of the parties in relation to an insurance policy issued to defendant Lucky Lady Saloon, under which defendant Cheryl West ("West") is an insured. Specifically, Essex asks this Court to recognize that the policy in question provides no coverage or duty to defend under the circumstances giving rise to two separate personal injury complaints filed in the Circuit Court of Marshall County, West Virginia, Civil Action No. 04-C-200K and Civil Action No. 04-C-201K. The defendants in this action

include Lucky Lady Saloon and West, who are the insureds and the defendants in the state court personal injury actions, and Dustin Neely ("Neely") and Mollie Fitzsimmons ("Fitzsimmons"), who are the plaintiffs in the state court actions. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1]

This action currently comes before this Court on Essex's motion for summary judgment, filed on September 28, 2007. Neely and Fitzsimmons filed a timely response, which Lucky Lady Saloon and West subsequently sought to join. Essex then filed a reply to Neely and Fitzsimmons' response in opposition to Essex's motion for summary judgment and also moved to strike the response filed by Neely and Fitzsimmons. In addition, Essex filed a response in opposition to Lucky Lady Saloon and West's motion to join Neely and Fitzsimmons' response in opposition to Essex's motion for summary judgment. All of the defendants then filed a joint response in opposition to Essex's motion to strike Neely and Fitzsimmons' response, and a joint reply in support of Lucky Lady Saloon and West's motion to join Neely and Fitzsimmons' response in opposition to Essex's motion for summary judgment.

---

[1]The parties do not dispute jurisdiction. Essex is an insurance company with its place of incorporation in Delaware and its principal place of business in Virginia. Lucky Lady Saloon is a voluntary association formed in West Virginia, with its principal place of business in West Virginia. All individual defendants are residents of West Virginia. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.

These matters have now been fully briefed and are ripe for disposition. For the reasons set forth below, this Court finds that the motion by Lucky Lady Saloon and West to join the response by Neely and Fitzsimmons in opposition to Essex's motion for summary judgment should be granted; that Essex's motion to strike the response by Neely and Fitzsimmons in opposition to Essex's motion for summary judgment should be granted as to defendants Neely and Fitzsimmons and denied as to defendants Lucky Lady Saloon and West; and that Essex's motion for summary judgment should be granted.

## II. <u>Facts</u>

On or about August 26, 2004, Neely and Fitzsimmons filed separate civil complaints against Lucky Lady Saloon and West in the Circuit Court of Marshall County, West Virginia, for claims arising out of motor vehicle accident that occurred on September 1, 2002. The complaint alleges that employees of Lucky Lady Saloon, which is owned by West, had served alcohol to an already intoxicated individual, David Matthews, who then negligently drove his motor vehicle into the motor vehicle in which Fitzsimmons was the driver and Neely was a passenger. As the state action plaintiffs, Neely and Fitzsimmons contend that Lucky Lady Saloon violated West Virginia's dram shop law, W. Va. Code § 60-7-12, and that West, as owner, is liable for the negligent acts of the employees of Lucky Lady Saloon. Neely and Fitzsimmons further contend that they have

suffered certain permanent injuries and have incurred medical bills and lost wages as a result of the allegedly negligent actions of the employees of Lucky Lady Saloon.

The action before this Court arises out of a dispute concerning insurance coverage for Lucky Lady Saloon and West. In October 2001, West met with insurance agent Tim Bandi ("Bandi") and purchased an insurance policy, provided by Essex, for commercial general liability coverage. After Neely and Fitzsimmons sued Lucky Lady Saloon and West in state court, Essex brought this declaratory action, in which Essex contends that the plain and unambiguous language of the policy's "Liquor Liability" and "Aircraft, Auto or Watercraft" provisions excludes coverage for Neely and Fitzsimmons' claims and imposes upon Essex no duty to defend Lucky Lady Saloon or West.

On September 28, 2007, Essex filed a motion for summary judgment. The defendants in this action--Lucky Lady Saloon, West, Neely, and Fitzsimmons--oppose summary judgment because, they claim, Bandi, as Essex's agent, created a reasonable expectation that the Essex policy provided West and Lucky Lady Saloon with liability coverage for the circumstances giving rise to Neely and Fitzsimmons' state action claims. In response, Essex contends that Neely and Fitzsimmons lack standing to assert the reasonable expectations doctrine because they are not parties to the policy and, therefore, have no legal interests or rights thereunder and

that Lucky Lady Saloon and West failed to timely file a response to the motion for summary judgment. Consequently, Essex concludes, summary judgment should be granted in its favor.

## III. <u>Applicable Law</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are

any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

Before turning to Essex's motion for summary judgment, this Court will first discuss the two pending nondispositive motions in

this case: (1) the motion by defendants Lucky Lady Saloon and West to join the response of defendants Neely and Fitzsimmons in opposition to Essex's motion for summary judgment ("motion to join"); and (2) the motion by Essex to strike the response by Neely and Fitzsimmons in opposition to Essex's motion for summary judgment ("motion to strike").

A.   Motion to Join

In the motion by defendants Lucky Lady Saloon and West to join the response of defendants Neely and Fitzsimmons in opposition to Essex's motion for summary judgment, counsel for Lucky Lady Saloon and West states that he was unavailable to review the final version of the motion before the filing deadline of Friday, October 12, 2007, established by this Court's scheduling order.  Consequently, counsel for Neely and Fitzsimmons filed the response on behalf of his clients only, and counsel for Lucky Lady Saloon and West, after reviewing the response at the first opportunity, immediately filed the motion to join on the court's next work day, Monday, October 15, 2007.

Essex opposes the motion to join.  In support of its position, Essex argues that defendants Lucky Lady Saloon and West failed to file a timely response and have not moved this Court to extend the deadline for filing a late response.[2]

---

[2]Essex also argues that the motion to join should be denied because Neely and Fitzsimmons lack standing to raise the defense of reasonable expectations and, therefore, their response should be

In reply, the defendants argue that a timely response was filed, providing Essex with a clear and accurate representation of all defendants' positions on the issues, and that Lucky Lady Saloon and West do not seek to add new factual assertions or legal arguments. Further, the defendants claim that they have engaged in joint discovery on the issue of the reasonable expectations defense, that they intended to file a joint response in opposition to Essex's motion for summary judgment, and that Essex has been fully aware of the defendants' positions on the issue of reasonable expectations throughout discovery. For these reasons, the defendants maintain that the motion to join should be granted.

This Court believes that, under the circumstances of this case, the motion to join is appropriately construed as a motion for leave to file a late response. For good cause shown, this Court will grant the motion to join and will deem the motion as incorporating the response of Neely and Fitzsimmons in opposition to Essex's motion for summary judgment as the response of Lucky Lady Saloon and West.

B.    Motion to Strike

Essex argues that Neely and Fitzsimmons lack standing to raise the reasonable expectations doctrine as a defense because they are not insureds under the policy issued to Lucky Lady Saloon and West. In a February 20, 2007 order denying a motion by Neely and

stricken. This contention will be discussed below.

Fitzsimmons to amend their answer to assert affirmative defenses, this Court found that neither Neely nor Fitzsimmons is an insured under the policy and, therefore, neither has a legal interest or right in the policy. Furthermore, this Court found that neither Lucky Lady Saloon nor West has assigned any rights, claims, or defenses to Neely or Fitzsimmons. Based upon this Court's finding, Essex claims that Neely and Fitzsimmons have no standing to oppose Essex's motion for summary judgment and that their response was improperly filed and should be stricken.

The defendants contend that the issue of standing as it relates to the response of Neely and Fitzsimmons to Essex's motion for summary judgment is a red herring because Lucky Lady Saloon and West, in their motion to join, have adopted the response of Neely and Fitzsimmons in its entirety. The defendants observe that the motion to join presents no new factual assertions and raises no new legal issues; rather, the motion to join merely adopts all the arguments that were timely presented by Neely and Fitzsimmons. According to the defendants, the adoption by Lucky Lady Saloon and West of Neely and Fitzsimmons' response moots any standing issues.

In light of this Court's earlier finding that Neely and Fitzsimmons have no legal rights or interests in the insurance policy and, therefore, lack standing to assert affirmative defenses, this Court concludes that the plaintiff's motion to strike must be granted as to Neely and Fitzsimmons. However, given

this Court's decision to grant the motion by Lucky Lady Saloon and West to join Neely and Fitzsimmons' response, which this Court has construed as a motion for leave to file a response out of time, this Court concludes that Essex's motion to strike must be denied as to Lucky Lady Saloon and West.

C.  Essex's Motion for Summary Judgment

In its motion for summary judgment, Essex argues that the language in the insurance policy sold to Lucky Lady Saloon is plain and unambiguous and that the policy clearly excludes coverage for liability in the matters contained in the relevant claims brought against Lucky Lady Saloon and West by Neely and Fitzsimmons in the state court action.

1.  Liquor Liability Exclusion

Essex argues that there is no coverage or duty to defend based upon the insurance policy's "Liquor Liability" exclusion.  Essex claims that these provisions are plain and unambiguous.

Under West Virginia law, an insurer seeking to avoid the duty to defend by incorporating an exclusion clause into a general liability policy must prove the facts necessary to show the operation of that exclusion.  Silk v. Flat Top Const., Inc., 453 S.E.2d 356 (W. Va. 1994).  Insurance policy provisions which are clear and unambiguous are not subject to judicial review or interpretation; rather, courts must give full effect to the plain

meaning intended.  <u>Kelly v. Painter</u>, 504 S.E.2d 171 (W. Va. 1987) ("<u>Kelly</u>").

Essex points to the following provisions of the Commercial General Liability Coverage policy sold to Lucky Lady Saloon to show that the policy's plain and unambiguous terms do not cover liquor liability and that they release Essex from a duty to defend:

Section I--Coverages

Coverage a Bodily Injury and Property Damage Liability

1.   Insuring Agreement

     a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

2.   Exclusions

This insurance does not apply to:

                              * * *

     c.   Liquor Liability [as modified by endorsement M/E-189(9/00)] . . . .

(Pl.'s Mot. for Summ. J. Ex. C.)

In turn, Endorsement M/E-189(9/00), entitled "Restaurant, Bar, Tavern, Night Clubs, Fraternal and Social Clubs Endorsement", states:

5.   Liquor Liability.  Liquor Liability 2.c. Exclusion, Commercial General Liability Coverage Form, Section I-

Coverage, is replaced by the following and applies throughout this policy:

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

a.) Causing or contributing to the intoxication of any person; and/or

b.) Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

c.) Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages; and/or

d.) Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol . . . .

(Pl.'s Mot. for Summ. J., Ex. C.)

The defendants do not contend that the liquor liability provisions are ambiguous in some way; rather, they claim that Bandi created a reasonable expectation that West had procured the coverage she needed for herself and Lucky Lady Saloon to defend and pay damages on claims relating to the alleged negligence of the employees of Lucky Lady Saloon in serving alcohol to an inebriated individual.

The West Virginia Supreme Court has held that the language of an insurance policy need not be ambiguous to trigger the doctrine

of reasonable expectations.  <u>Romano v. New England Mut. Life Ins.</u>
<u>Co.</u>, 362 S.E.2d 334 (W. Va. 1987); <u>Keller v. First Nat'l Bank</u>, 403
S.E.2d 424 (W. Va. 1991).  Where an exclusion is not communicated
to the insured, the reasonable expectations doctrine may override
the plain and unambiguous language of the policy.  <u>See</u> <u>American</u>
<u>Equity Ins. Co. v. Lignetics</u>, 284 F. Supp. 2d 399, 405 (N.D. W. Va.
2003)("<u>American Equity</u>").  "An insurer wishing to avoid liability
on a policy purporting to give a general or comprehensive coverage
must make exclusionary clauses conspicuous, plain and clear,
placing them in such fashion as to make obvious their relationship
to other policy terms, and must bring such provisions to the
attention of the insured." <u>Nat'l. Mut. Ins. Co. v. McMahon & Sons,</u>
<u>Inc.</u>, 356 S.E.2d 488, 496 (W. Va. 1987)(emphasis added).  Thus,
under West Virginia law, the doctrine of reasonable expectations
"may apply in situations where an insurer attempts to deny coverage
based on an exclusion that was not communicated to the insured, or
where there is a misconception about the insurance purchased."
<u>American Equity</u>, 284 F. Supp. 2d at 406.

However, merely raising the defense of reasonable expectations
is insufficient to survive a motion for summary judgment.  The non-
moving party must demonstrate the existence of a genuine issue of
material fact.   In this case, the defendants must show that a
genuine issue of material fact exists relating to the argument that
Essex, or Bandi, as the insurance agent who procured the policy for

Lucky Lady Saloon and West on behalf of Essex, failed to communicate the liquor liability exclusion to West or otherwise created a misconception about liability coverage in the policy that West purchased from Essex through Bandi.

In support of its claim that the reasonable expectations doctrine does not apply to the facts of this case, Essex points to the deposition of the insurance agent who sold the policy to Lucky Lady Saloon and West, Tim Bandi. In his sworn deposition, Bandi states that no all-encompassing policy provides liquor and general liability coverage for non-restaurants. (Bandi. Tr. 43:10-12.) He further states that when dealing with prospective clients who want to purchase liability insurance for an establishment that serves alcoholic beverages, his standard practice is to inform them that they need liquor liability coverage and that there are additional costs and a separate application process to obtain such coverage. (Bandi Tr. 31:13-20; 36:23-24; 37:1-21; 38:1-14.) According to his deposition testimony, Bandi begins his discussion about insurance with a description of what the general liability policy covers. (Bandi Tr. 36:1-4.) He then proceeds to discuss the particulars of what a specific policy covers:

> Then, I said,[3] "Now listen, this policy has limitations, exclusions, and deductibles." . . . "The biggest"--"biggest exclusions under these policies is

---

[3]Although Bandi uses the past tense of the verb "to say" in this portion of his deposition, he is describing his general practice.

14

getting hit in the nose when two drunks get fighting, and the other is"--and I call it "liquor liability." I say it very clearly . . . . "You are in a business to make money, but it's a double-edge sword. You want to make a lot of money selling that booze, but it's can't go over the line because now you are responsible for the actions of that individual. And that's where we've got to talk, if you would like to, about another contract, which is a different price, a different coverage, different everything." . . . I use the same spiel on everybody. "I come into your bar and I have two beers. I go out in the parking lot, have a couple more shooters, I got some weed out there. Now, I go down the road and kill somebody. Where was the last place I was? It was your place. Now, you've got to show the court--and by the mercies of an attorney--that you had nothing to do with this case--this incident. Well, this is what this contract will do. It pays for your defense as well as the amounts of insurance you pay for if the claim is rendered against you." Okay.

Now, I said, "That's a separate policy, and you have to go through'--which I've already said--'preapproval . . . .'"

(Bandi Tr. 36:23-24; 37:1-21; 38:1-14.)

Elsewhere in his deposition, Bandi repeats how he typically assesses and discusses the need for additional liquor liability coverage:

Q. (By Mr. Groome) Did you do any investigation in order to obtain the facts of what type of coverage you needed to obtain for Cheryl West?

A. No. Anybody--anybody that has a bar, that serves alcohol, be it a Convenient with a Class C carryout license, be it a Class A license, which has carryout and serves on-premise[s], needs--should have liquor liability insurance. And that's why I don't have to even think about it. If they're a bar or a carryout or a Convenient, I tell them, "This is what you got here, but you're also going to need another contract to cover what's excluded." That's how I decide. "You sell beer, you need liquor law liability." And that's what--I've been saying the same pitch forever.

(Bandi Tr. 58:13-24; 59:1-3.)

Bandi also states that when he met with West, he followed his general practice. After making small talk, he proceeded to discuss both general insurance coverage and exclusions: "I went into talking about coverages, general liabilities, what they pertain to, the exclusions, limitations, deductibles, and the gray areas which can be covered with other insurances." (Bandi Tr. 54:14-17.) Further, he recalls specifically informing West of the need to purchase an additional policy to cover liquor liability:

> Q.    Well, is it my understanding that Cheryl West just came in and said, "I have a bar. I need insurance" and that's all the facts you had when you looked into obtaining a policy for her?
>
> A.    She has a bar. I said, "Now, here's what's covered, Cheryl. What's not covered is what happens when your drunk patron punches someone in the nose on-premises, or goes down the street and kills themselves, causes property damage, so forth and so on. And to cover that gap, we need this." I told her the same thing as I tell every one of my cus--prospective customers who are in the liquor business.

(Bandi Tr. 59:4-15.)

Although Bandi does not recall West's precise response, he is certain that he explained liquor liability to her and that she either immediately declined to purchase an additional policy or indicated that she would think about it and let Bandi know if she later decided to purchase it. (Bandi Tr. 59:24; 60:1-22; 68:13-22.)

The defendants claim that summary judgment is improper on the facts of this case because the deposition testimony of West creates a genuine issue of material fact on the issue of reasonable expectations. According to West, her bookkeeper, Jerry McClure ("McClure") arranged for West to purchase insurance from Bandi. (West Tr. 20:15-24; 21:13-16). West and McClure never discussed the type of insurance she needed (West Tr. 21:17-21), nor did she discuss insurance with her former employer, Rex Whipkey, whose policy West believed should serve as the model for her own. (West Tr. 14:9-13; 22:2-7; 38:5-7).

In her sworn deposition, West states that what she remembers about her meeting with Bandi is that he gave her paperwork that he had prepared for her to sign, that she did not ask him about the type of coverage she was purchasing, and that she does not recall that he told her anything about the type of coverage she was getting. (West Tr. 25:10-20.)

> Q. What parts [of the conversation with Bandi] do you recall?
>
> A. Come on in, Sherry, how are you doing, Sherry, have a seat, here's your paperwork, sign it, write me out a check, see you later. That's what I remember.
>
> Q. So that's the gist of it?
>
> A. That's the gist of it, yes.
>
> Q. Did you ask them about what type of coverage you were getting?
>
> A. No, I didn't.

Q. Did he tell you anything about the type of coverage you were getting?

A. No, he didn't, not that I recall.

(West Tr. 25:9-25).

West, however, does recall that Bandi never told her that she was covered for liquor liability:

Q. [D]id Mr. Bandi ever tell you that if a patron came into your saloon, became intoxicated or already was intoxicated and was served beer or alcohol or liquor by one of your employees and then went out, got into his car and got into a motor vehicle accident and injured another person, that you would be covered for that?

A. No. We never had that conversation, no.

(West Tr. 25:22-24; 26:1-4.)

Even though West relied on McClure to make the necessary arrangements, and even though she made an assumption that she should have the same insurance as Whipkey, without making any attempt to inform herself about what insurance she needed, what insurance Whipkey had purchased, or what insurance she herself was purchasing, West states that she thought she "was covered on everything." (West Tr. 26:13.) When asked how she reached that conclusion, West admitted that she had not relied upon anything that Bandi had said to her:

Q. Your understanding is this was a commercial general liability policy?

A. I thought I was covered on everything.

Q. How did you come about that understanding? Is that just what you thought?

A.   That's just the way I understood it, yes.

Q.   It wasn't based on anything that Mr. Bandi actually said to you at all.  Is that correct?

A.   No, because he just did the paperwork and that was it.

(West Tr. 26:11-20.)

Later in her deposition, West states that when she spoke to Bandi, she may have asked him whether she was purchasing the same coverage as Whipkey and that she would have been satisfied with such coverage because she "thought [Whipkey] had everything." According to West, she "was never offered anything else."  (West Tr. 38:2-7.)

In essence, West claims that although Bandi did not affirmatively inform her that she was covered for liquor liability, he did not offer to sell her an additional policy.  However, West's testimony does not demonstrate in any way that Bandi failed to inform her that the Essex policy excluded liability coverage.  At most, she does not recall.  West's conclusion that she thought she had everything she needed seems to be based upon her own assumptions about the coverage that her former employer had rather than on any reasonable expectations created by Bandi's words or conduct.  Consequently, this Court concludes that the doctrine of reasonable expectations does not apply in this case and, therefore, Essex's motion for summary judgment should be granted.

2. <u>Auto Exclusion</u>

Having determined that the liquor liability exclusion in the Essex policy is plain and unambiguous and that the reasonable expectations doctrine does not apply to the this case, the argument concerning the auto exclusion in the Essex policy is moot. However, even if the reasonable expectations doctrine did apply to the liquor liability exclusion, this Court finds that Essex would still be entitled to summary judgment because the policy's auto exclusion provision excludes coverage for the claims brought against Lucky Lady Saloon and West in the state actions.

Essex argues that the language of the auto exclusion provision plainly and unambiguously excludes liability coverage for injuries sustained in off-premises motor vehicle accidents. Because the motor vehicle accident giving rise to the state claims did not occur on the premises of Lucky Lady Saloon, Essex contends that the policy provides no liability coverage.

The defendants, on the other hand, claim that the auto exclusion provisions are ambiguous in that a reasonable person may interpret the exclusion to apply only to injuries arising out of the use of business vehicles. Furthermore, the defendants argue that the state complaint does not allege that the injuries were the result of the use of a vehicle, but rather that the state defendants are liable because they served alcohol to a clearly inebriated individual. Consequently, they conclude, the auto

exclusion is inapplicable. The defendants also argue that Essex cannot escape liability under the auto exclusion because that provision fails to conspicuously exclude off-premises liability and such exclusion was not brought to the attention of the insured. Finally, returning to the argument that the auto exclusion relates only to business vehicles, the defendants contend that the auto exclusion is not intended to apply to acts or omission that are only tangentially related to an automobile. Rather, they claim, the provision is meant to exclude from coverage those acts which would otherwise fall under a business automobile policy.

This Court finds that the policy language is clear, and it is unambiguous. Section I, paragraph 2 of the Commercial General Liability Coverage Form lists the exclusions of the policy and provides, in pertinent part:

2. Exclusions

This insurance does not apply to:

* * *

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

(Defs.' Mot. for Summ. J. Ex C.)

This exclusion is modified by endorsement M/E-001(4/00), entitled "Combination General Endorsement," which provides in bold typeface:

THIS ENDORSEMENT CHANGES THE POLICY.

* * *

2. With respect to any "auto," under 2. Exclusions, g. Aircraft, Auto or Watercraft, Commercial General Liability Coverage Form, Section I. Coverages, the first paragraph is replaced by the following and applies throughout this policy: This insurance does not apply to "bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading."

(Defs.' Mot. for Summ. J. Ex C.)

Under the clear terms of the policy, the endorsement M/E-001(4/00) modifies the exclusion from "any . . . 'auto' . . . owned, operated by or rented or loaned to any insured" to "any 'auto'". (Defs.' Mot. for Summ. J. Ex C.) Although the defendants' arguments would be more persuasive if only the original provision were in effect, the modification effected by the endorsement clearly broadens the universe of autos to which the exclusion applies to encompass non-business vehicles. Furthermore, this Court finds that the bold-face type and capital letters used in the endorsement are adequately conspicuous to alert the insured to the modification and rejects the defendants' argument suggesting otherwise. Similarly, this Court rejects the defendants' contentions that the off-premises location of the motor vehicle

accident giving rise to the state actions is tangential and, consequently, immaterial to the application of the auto exclusion because, the defendants argue, the serving of alcohol to an intoxicated individual occurred on the premises of Lucky Lady Saloon. The basis of the state plaintiffs' complaints notwithstanding, the motor vehicle accident resulting in the plaintiffs' alleged injuries indisputably occurred off premises. Therefore, the use of an auto off premises gave rise to, caused or contributed to the state plaintiffs' alleged bodily injuries. Consequently, the auto exclusion applies.

V. <u>Conclusion</u>

For the reasons stated above, it is ORDERED that the motion by Lucky Lady Saloon and West to join the response by Neely and Fitzsimmons in opposition to Essex's motion for summary judgment be GRANTED; the motion by Essex to strike the response by Neely and Fitzsimmons in opposition to Essex's motion for summary judgment be GRANTED as to defendants Neely and Fitzsimmons and DENIED as to defendants Lucky Lady Saloon and West; and the motion by Essex for summary judgment be GRANTED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal

Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment

on this matter.

    DATED:    March 4, 2008


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE